IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| KEVIN EARL ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 314-060 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Kevin Earl Anderson appeals the decision of the Acting Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff protectively applied for DIB and SSI on November 8, 2010, alleging a disability onset date of that same date. Tr. ("R."), pp. 12, 32, 118-30. Plaintiff was forty-four years old at his alleged disability onset date and was forty-seven years old when the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 21, 118, 124. Plaintiff

applied for disability benefits based on a combination of alleged impairments, including status post right shoulder rotator cuff injury and surgery; shoulder pain; insulin dependent diabetes mellitus with peripheral neuropathy of bilateral lower extremities; obesity, hypertension; asthma; and vision impairment. R. 14-15, 31. Plaintiff has a tenth grade education, and prior to his alleged disability had accrued a relevant work history that included work as a janitor, fry cook, grill cook, dishwasher, and housekeeper. R. 19, 34-37, 153, 180-85, 191.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 59-62, 67, 73-77. Plaintiff then requested a hearing before an ALJ, R. 80-83, and the ALJ held a hearing on November 7, 2012. R. 27-57. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Abbe May, a Vocational Expert ("VE"). Id. On December 26, 2012, the ALJ issued an unfavorable decision. R. 9-26.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 8, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: asthma, neuropathy, obesity, vision impairment, and diabetes (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds and must avoid all exposure to unprotected heights. The claimant can only occasionally stoop, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to poorly ventilated areas, and to environmental irritants such as fumes, odors,

2

dusts, and gases.[1] Thus, the claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including ticket seller, office helper, convenience store clerk, final assembler, table worker, and telephone order clerk. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2010, through December 26, 2012 (the date of the ALJ's decision). (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 14-21.

When the Appeals Council denied Plaintiff's request for review, R. 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly evaluate and assign weight to the opinion of Vasudev Kulkarni, M.D., a consultative examiner, when considering Plaintiff's shoulder injury, and (2) the failure to properly analyze Dr. Kulkarni's opinion led to an improper step two severity determination and consequently, an improperly formulated RFC for light work. See doc. no. 13 ("Pl.'s Br."). The Commissioner maintains that the ALJ's decision is supported by substantial

---

[1] "Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

evidence and should therefore be affirmed. See doc. no. 14 ("Comm'r's Br.").

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Assigning Weight to the Opinion of a One-Time Consultative Examiner at Step Two of the Sequential Process, Where a Claimant's Burden Is Mild, and Only the Most Trivial Impairments May Be Rejected.

Plaintiff argues that the ALJ erred at step two of the sequential process because she did not find that Plaintiff's right shoulder injury was a severe impairment, and in particular, that the ALJ did not properly evaluate and assign weight to the opinion of consultative examiner, Vasudev Kulkarni, M.D., in rejecting Plaintiff's shoulder injury as a severe impairment. Pl.'s Br., pp. 4, 6-8. The Commissioner argues that the ALJ did properly evaluate Dr. Kulkarni's opinion, but even if the ALJ erred, the error was harmless because the ALJ found some severe impairments and continued with the sequential process. Comm'r's Br., pp. 5-6.

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Commissioner of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20

5

C.F.R §§ 404.1527(c), 416.927(c)). As a general rule, the opinion of a one-time examiner is not entitled to great weight. Stone v. Commissioner of Soc. Sec., 544 F. App'x 839, 842 (11th Cir. 2013); Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004). The law is clear, "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." Stone, 544 F. App'x at 842 (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)). However, as part of the duty to develop a full and fair record, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In the absence of a statement from the ALJ concerning the weight given to different medical opinions and the reasons for assigning such weight, the reviewing court will be unable to determine whether the decision is supported by substantial evidence. Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

In considering a doctor's opinion at step two of sequential process, the regulations instruct that a severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) and 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

6

>   (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
>   (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). However, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Commissioner of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady, 724 F.2d 914). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id.

As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild." Id. Moreover, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the

outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

**B. The ALJ's Step Two Severity Determination Concerning Plaintiff's Shoulder Injury, as well as the Resultant RFC, Is Not Supported by Substantial Evidence Because the ALJ Failed to Properly Evaluate Dr. Kulkarni's Opinion.**

The ALJ's opinion clearly shows that she was aware of, and considered, Dr. Kulkarni's opinion. Indeed, the ALJ referenced Dr. Kulkarni's findings several times in her written opinion. R. 15, 16, 18, 19. The problem is that the ALJ's opinion does not reflect she considered the entirety of Dr. Kulkarni's findings, or if she did, why she rejected the portions that conflicted with her ultimate decision to reject the shoulder injury as a severe impairment or otherwise include any restrictions in the RFC in specific consideration of Plaintiff's shoulder injury.

Dr. Kulkarni conducted his consultative examination of Plaintiff on May 11, 2011. R. 248-55. Dr. Kulkarni acknowledged that he had been provided no background medical information prior to conducting his examination. R. 253. Plaintiff's chief complaint was a right arm and shoulder problem, which was described as "[c]hronic pain in the right shoulder and entire right upper extremity for several years." Id. With respect to Plaintiff's shoulder, Dr. Kulkarni stated Plaintiff "has not seen anyone since the [rotator cuff] surgery in 1998," but it was noted that Plaintiff was taking hydrocodone for pain. Id. Dr. Kulkarni further recorded Plaintiff was right handed and appeared for his examination wearing a sling on his right arm. R. 254, 255. Although Plaintiff's grips were recorded as equal and normal bilaterally and no shoulder deformity was revealed, Dr. Kulkarni wrote, "There is tenderness

8

over the anterior aspect, and all active and passive movements are quite painful." R. 255. The report also concludes, "[Plaintiff] has significant tenderness of the right shoulder and limitation of all active and passive movements of the right shoulder," as well as "marked limitation of all shoulder movements on the right side." Id.

In support of his findings, Dr. Kulkarni recorded a reduced range of motion in all categories of abduction, forward elevation, internal rotation, and external rotation for Plaintiff's right shoulder. R. 249. Dr. Kulkarni recorded no problems with "functional use of impaired upper extremity(ies)" regarding fine and gross movements necessary for things like feeding oneself, taking care of personal hygiene and sorting papers or files. R. 252. However, Dr. Kulkarni did note a limitation on Plaintiff's right upper extremity (RUE) for functions such as reaching, pushing, pulling, grasping, and fingering. R. 252. Despite these noted limitations, Dr. Kulkarni's review of an x-ray of Plaintiff's right shoulder showed normal bony structures, no deformity or degenerative changes, and no soft tissue calcification. R. 255.

The ALJ acknowledged Plaintiff's claims of severe shoulder pain, but concluded that the objective evidence did not support shoulder injury as being a severe impairment. R. 15. In reaching this conclusion, the ALJ relied on all portions of Dr. Kulkarni's report that supported her conclusion of a non-severe shoulder impairment, including lack of supporting imaging evidence. R. 15, 17, 18. Nowhere does the ALJ mention Dr. Kulkarni's findings concerning a reduced range of motion, significant tenderness, or marked limitation of all shoulder movements on the right side.

Although it is clear that the ALJ considered at least portions of Dr. Kulkarni's report, the ALJ failed to offer any explanation for accepting the portions of the report that supported the ALJ's conclusion of a non-severe shoulder impairment but giving no weight to the portions of the report suggesting that an in-person examination revealed tenderness and reduced range of motion in the right shoulder. "It is not enough to discover a piece of evidence which supports [the administrative] decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986); see also Martin v. Heckler, 748 F.2d 1027, 1033 (5th Cir. 1984) (rejecting misuse of one set of positive test results, to the exclusion of all other evidence of record, to find claimant not disabled when the ignored evidence suggested other severe impairments).

The Commissioner's attempt at a post-hoc explanation of why certain portions of Dr. Kulkarni's report do not change the disability determination cannot excuse the error because the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin, 748 F.2d at 1031 (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). In any event, it is not entirely clear what some of the evidence is that the Commissioner is relying on in making her post-hoc explanation because she cites to pages of the record that simply do

not exist in this case. See Comm'r's Br., p. 6 (citing pages 431-34 and 474-77 although the administrative record ends at page 364).

Moreover, in discounting Plaintiff's shoulder injury as a non-severe impairment, the ALJ noted that Loren Carter, M.D., a state agency consultant who reviewed Plaintiff's records, stated that Plaintiff had not received treatment for his shoulder since 1998.[2] R. 15. However, records submitted after Dr. Carter reviewed Plaintiff's files show that Plaintiff had sought treatment from Community Healthcare Systems for shoulder pain. R. 289-304 (Ex. 7F). Indeed, on March 3, 2011, approximately two months prior to Dr. Kulkarni's examination, records show Plaintiff had severe right shoulder pain "with abd 20 degrees/flex 30 degrees," and Plaintiff requested and received medication for the associated pain from Dr. Charles E. Jackson, M.D. R. 302-03. The ALJ does not mention these treatment records as they relate to Plaintiff's shoulder, although she was apparently aware of them because she cited to Exhibit 7F during the discussion of Plaintiff's diabetes. R. 18. Thus, it appears as though the ALJ may have made the same mistake Dr. Carter made in overlooking certain portions of the record,[3] a mistake which caused the ALJ to give Dr. Carter's opinion "little weight." R. 19.

Although the ALJ relies on a lack of treatment in support of the conclusion that Plaintiff's shoulder injury is non-severe, she also fails to address Plaintiff's testimony that he

---

[2] It appears as though this language may have been taken directly from Dr. Kulkarni's report, even though Dr. Kulkarni acknowledged he had not been furnished with any background medical information by disability services. R. 253. Moreover, as discussed herein, Plaintiff had sought treatment from Community Healthcare Systems, and he testified that financial constraints limited his ability to seek additional treatment. R. 38-39.

[3] The record also contains Plaintiff's "Disability Report – Appeal - Form SSA-3441," dated August 16, 2011, which states Plaintiff sought treatment for shoulder pain from Dr. Charles Jackson at the Community Health Center in February of 2011. R. 197.

11

tried, but was unable to afford, additional treatment. R. 38-39. It is well-settled that poverty may excuse failure to comply with treatment. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003). "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to afford medical care before denying" benefits based on non-compliance with such care. Beegle v. Social Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012).

Moreover, the ALJ concluded that Plaintiff could perform light work with restrictions, which by definition in the social security regulations means that Plaintiff can perform sedentary work. 20 C.F.R. §§ 404.1567(b) & 416.967(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.") Indeed, in addition to the light jobs identified by the ALJ, the ALJ relied on the existence of three, unskilled sedentary jobs Plaintiff could perform to conclude Plaintiff was not disabled. R. 20. However, as Plaintiff correctly argues, SSR 96-9p provides that certain types of limitations, for example, significant manipulative limitations, may erode the unskilled sedentary occupational base. SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996).

In sum, the ALJ did not ignore Dr. Kulkarni's report, but it is clear that the ALJ concluded Plaintiff's shoulder injury was non-severe at step two, and thus "trivial," by focusing only on the portions of the record that supported her conclusion and disregarding, without sufficient explanation, portions of the record that did not support her conclusion. Moreover, the Commissioner's assertion that any error in identifying Plaintiff's right shoulder injury as a severe

impairment is harmless because the ALJ proceeded past step two in the sequential process is without merit. None of the other severe impairments identified resulted in limitations in the RFC relating to exertional or non-exertional limitations as might be indicated by acceptance of the portions of Dr. Kulkarni's report, as well as treatment records from Dr. Jackson at Community Healthcare Systems, showing limited range of motion in Plaintiff's right shoulder and pain significant enough to warrant prescriptions for hydrocodone. Nor does the Commissioner's argument account for how the rejected shoulder limitations might narrow the scope of available jobs if considered in combination with the other severe impairments.

The ALJ must base her decision on the entire record, not just the portions that support her ultimate conclusion. Because she did not do that in this case, the ALJ's decision is not based upon substantial evidence. See McCruter, 791 F.2d at 1548. The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and

that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 6th day of July, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA